(No. 1622, April 28, 1914)

THE LA MESA COMMUNITY DITCH, a Corporation, Appellee, vs. NICHOLAS APPELZOELLER, et al., Defendants, and E. A. HERRON, et al., Appellants.

### SYLLABUS BY THE COURT.

1. No remedy is provided for the collection of assessments levied by acequia commissioners, under the provisions of paragraph 11 of the Compiled Laws of 1897, as amended by Sec. 1, Chap. 44, S. L. 1903, except the deprivation of the delinquent party of the right to the use of water until payment is made, and the community officers are necessarily confined to the remedy given.

P. 81

2. Where a party is in default, in the payment of such an assessment, and has been notified not to take and use water until such assessment is paid, and such delinquent consumer, in violation of such order, takes and uses water, he is guilty of a misdemeanor. It is no defense, in a prosecution for such misdemeanor, to allege and prove that the assessment so levied and not paid by the water user, is excessive.

P. 82

3. In an action for injunction it is essential that the com-

plaint disclose facts in order to enable the court to determine from the facts so alleged the necessity of awarding the extraordinary remedy of injunction. The naked allegation, that great and immediate irreparable damage will result to the plaintiff, unsupported by any facts, is not sufficient. The complaint must show how, in what way, and for what reason the threatened damages are irreparable.

P. 82

4. The unlawful diversion of water from a community acequia, or the naked trespass, unaccompanied with great or irreparable damage or mischief, will not warrant equitable relief, as the statute affords an ample remedy.

P. 82

5. Equity will not interfere to prevent the commission of a crime. It will, however, intervene to protect property and property rights from irreparable injury, even though the acts sought to be enjoined are criminal acts. But the court will not award equitable relief, merely because the acts complained of constitute a violation of a criminal statute

P. 84

6. When the complaint fails to state a cause of action and clearly shows that, upon the case as stated, the plaintiff can not recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict, where the defects in the complaint are not supplied by the evidence.

P. 85

7. While the filing of a cross bill, founded on matters of equitable cognizance, will cure any defects of jurisdiction under the original bill, and authorizes the granting of relief to any party entitled thereto, still, if the cross bill fails to state grounds for equitable relief, the defect is not cured.    P. 85

La Mesa Community Ditch v. Appelzoeller, 19 N. M. 75.

8. Courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive and will not, in the absence of fraud, be disturbed.

P. 86

9. A counter claim, under the code, must be intended to answer the complaint and must run counter to plaintiff's demand, in whole or in part.

P. 88.

Appeal from District Court Dona Ana County; Edward L. Medler, Presiding Judge. Reversed with instructions.

HOLT & SUTHERLAND, Las Cruces, N. M., for Appellants.

Injunction to restrain the commission of crime will not lie. Bish. New Crom. Proc., Secs. 1412 and 1415; High on Injunc., 2nd Ed., Sec. 20; 22 Cyc. 775; Id. 902; 158 U. S. 564.

Protection against forfeiture of water rights by nonuser. Sec. 42, Chap. 49, Laws 1907; 13 N. M. 147; Sec. 11, C. L. 1897; Sub-Sec. 40, Sec. 2685, 2947, C. L. 1897; 31 Cyc. 1268.

YOUNG & YOUNG, J. H. PAXTON, Las Cruces, N. M., for Appellee.

When party demurs to opponent's pleading and pleads after demurrer is overruled, he waives any error in court's ruling on demurrer. 13 N. M. 111; 2 Cyc. 646; 68 U. S. 25; 1 Ky. L. R. 309; 31 Cyc. 344; 158 U. S. 664; 57 Am. St. Rep. 443; 52 Am. St. Rep. 622; 22 Cyc. 902.

Plaintiff's demurrer properly sustained. C. L. 1897, Sec. 2685, Sub-Secs. 1, 41; 20 N. Y. 218; 7 Lans. 471; 21 N. Y. 191; 24 How. Prac. 329; 35 Wis. 618; Bliss on Code Pleading, Sec. 389; 10 N. M. 6; Sutherland

Code Pleading, Sec. 63, 634; 45 Cal. 8; 135 Cal. 40; 12 Oreg. 169; 69 Wis. 655; 13 N. Dak. 267; 37 Kan. 515; 8 How. Prau. 336; 32 Mont. 581; 90 Pac. 70.

Petition of Intervention. C. L. 1897, Sec. 2947.

Burden of Proof. 102 Pac. 331; 38 Cyc. 1310, 1325; 65 Am. Dec. 334; 9 N. M. 467.

Exclusion of testimony offered by appellants and admission of testimony over objections by appellants. 9 N. M. 526.

Use of Water. 16 Cyc. 972; Marshall on Corp., Sec. 311, p. 794; 2 Cook on Corp. Sec. 729, p. 1847; 12 Cent. Digest, Sec. 806.

### OPINION.

ROBERTS, C. J.—This is a suit brought by the La Mesa Community Ditch against a large number of water right owners in the ditch to restrain them from using water contrary to the orders of the Commissioners and Mayordomo. Among other things, the complaint alleges that on December 2, 1912, the Commissioners of the Ditch made an assessment for each day's fatigue current for the following year "to provide funds for the payment of the salary of the Mayordomo and other legitimate expenses incident to the proper conduct and maintenance of the ditch for 1913," and that such assessment was necessary for the purposes mentioned; that due notice of the assessment was given to, and demand for the payment of same made upon, all water right owners; that defendants failed and refused to pay the assessment; that, to-wit, May 9, 1913, plaintiff ordered defendants not to take or use water from the ditch until the assessment was paid; that defendants continually thereafter took and used such water and threatened to continue so doing contrary to such orders, "to plaintiff's great and irreparable damage," and that plaintiff had no adequate remedy at law in the premises.

The complaint was verified and upon the ex parte showing thus made a preliminary injunction was issued, together with an order to show cause. To the complaint defendants interposed a demurrer, upon the ground that

it did not state facts sufficient to constitute a cause of action, because, among other reasons specified it appeared from the allegations of the complaint that plaintiff was not without an adequate remedy at law, as the statute of New Mexico prescribed a specific remedy for the wrong complained of by plaintiff. The demurrer was overruled. Defendants thereafter filed an answer to the merits, and by way of cross bill or counter claim attempted to secure affirmative relief against the plaintiff. (1) To prevent plaintiff from closing down their various headgates and depriving them of the use of water, because of the alleged illegality of the assessment, and, (2) to compel plaintiff to reconstruct the intake and a portion of the main ditch, theretofore alleged to have been washed out by floods.

The ground set forth, as a predicate for the alleged illegality of the assessment, was as follows:

"That as cross-complainants are informed and believe, and therefore aver, said cash assessment in the amount aforesaid was not necessary for the payment of the salary of the mayordomo of said community ditch and other legitimate expenses incident to the proper conduct and maintenance of said community ditch, but was, and is, largely in excess of the amount required for such purposes."

A demurrer was interposed to each of said cross bills, which was sustained as to the second and overruled as to the first. Thereupon reply was filed by the plaintiff and the cause proceeded to trial. The court held that the burden of proof was upon the defendants, upon their cross bill, and after defendants introduced their evidence, judgment was entered for the plaintiff, enjoining defendants from using water until their assessments had been paid. From the judgment so rendered this appeal is prosecuted.

Appellants have assigned and discussed in their brief, many alleged errors relating to rulings of the court upon the pleadings, and the trial of the cause. We shall confine our attention, however, to the pleadings, for our conclusions thereon will dispose of the controversy.

In order to arrive at an understanding of the questions involved, it is perhaps advisable to set out the sections of the statute which gave rise to the controversy, as the

proper solution of the questions presented depend, more or less upon the proper construction of these statutes.

Paragraph 11 of the Compiled Laws of 1897, as amended by Sec. 1, Chap. 44, S. L. 1903, in part, reads as follows:

"The commissioners shall assess fatigue work or tasks of all parties owning water rights in said community ditches or acequias, and shall have power to contract and be contracted with and also to make all necessary assessments to provide funds for the payment of the salary of the mayordomo and other legitimate expenses incident to the proper conduct and maintenance of the acequias under their charge, and also to make contracts for obtaining water for irrigation purposes in connection with their ditches, such contracts to be ratified by a vote of the majority of the owners of water rights in said ditches; and shall have general charge and control of all affairs pertaining to the same, together with the power to receive money in lieu of said fatigue or task work at a price to be fixed by them; and shall, immediately upon taking office provide by-laws, rules and regulations not in conflict with the laws of the territory for the government of said ditch or acequia, and a printed copy thereof shall be furnished to each owner of a water right in said ditch."

Section 13, C. L. 1897, as amended by Sec. 2, Chap. 44, S. L. 1903, reads as follows:

"Any person, not the owner or duly authorized representative of the owner, of a water right in said ditch, or any such owner or representative who shall, contrary to the orders of the mayordomo or commissioners, cut, break, stop up, or interfere with said acequia or any contra or lateral acequia thereof, or take or use water from the same contrary to such orders, shall be guilty of a misdemeanor, and upon complaint made before the nearest justice of the peace, a warrant shall issue for his arrest, as in the case of any other offence against the territory, and upon conviction the defendant shall be fined in a sum of not less than ten dollars nor more than fifty dollars, and in default of the payment of said fine shall be confined in the county jail for a period of not less than five

nor more than thirty days. And it is hereby made the duty of the mayordomo of any such acequia to prosecute in the name of the Territory of New Mexico any violation of this section whenever he shall obtain knowledge thereof, and his failure to do so shall be deemed a misdemeanor, and upon conviction thereof shall be fined in a sum not less than twenty-five dollars nor more than fifty dollars, or by imprisonment in the county jail not less than ten nor more than thirty days."

Other provisions, relating to community acequias will be found in Chapter 1, C. L. 1897, and amendments thereof. It is not necessary to set out in full the other provisions of the law, and it probably will suffice to say that the legislature has made provision for the regulation, government and control of acequias, in order to facilitate the distribution of water, and the upkeep and repair of the ditches. A discussion of the history, nature and character of these community acequias will be found in the case of Snow vs. Abalos et al., 18 N. M. 681, decided at the present term of this court.

By the statutes provision is made for the election of commissioners by the water users under an acequia, and the duties of these officials are prescribed. They are given power "to make all necessary assessments to provide funds for the payment of the salary of the mayordomo and other legitimate expenses incident to the proper conduct and maintenance of the acequias under their charge."

Community acequias are made corporations for certain purposes, with power to sue and be sued as such.

A person in default, after due notice, in the payment of the amount assessed against him, has no right to take or use any water from the acequia, or contra acequia or lateral thereof. If he does so, in violation of the orders of the mayordomo, his act in so doing constitutes a misdemeanor, for which he can be punished.

No remedy is provided for the collection, by the officers of the community acequia, of the assessments so levied, except the deprivation of the delinquent party of the right to the use of the water until payment is made, and the community officers are necessarily confined to the

remedy given. This would appear to be an adequate and complete remedy, for the member of the community must have water for the irrigation of his lands. If he takes this water, contrary to the orders of the mayordomo, he is subject to a fine of not less than ten nor more than fifty dollars. And each time he opens his headgate, contrary to such orders, constitutes a separate offense.

In such a prosecution, it is no defense to allege and prove that the assessments so levied and not paid by the water user, are excessive, for it must be apparent that the water user would have no right to litigate the necessity of the assessment in a criminal case. The only question, in such a case for determination, is whether the defendant took and used the water in violation of the orders of the mayordomo. If such official arbitrarily and fraudulently denies water to a consumer, to which he is justly entitled, he would have his recourse in a court of equity.

The bill of complaint in this case alleges that defendants are taking water in violation of the orders of the mayordomo, "to plaintiff's great and immediate irreparable damage." No facts are alleged, however, showing any damage, other than the fact that appellants have not paid the assessment so levied. This failure to pay the assessment, in and of itself, certainly would not warrant the conclusion that irreparable damages would result from appellants' acts in taking the water in defiance of the orders of the mayordomo. In an action for injunction it is essential that the complaint disclose facts in order to enable the court to determine, from the facts so alleged, the necessity of awarding the extraordinary remedy of injunction. The naked allegation, that great and immediate irreparable damage will result to the plaintiff, unsupported by any facts, as it is, is not sufficient. Shafor et al. vs. Fry, 164 Ind. 315. And the complaint must show, how, in what way, and for what reason the threatened damages are irreparable. Schuster vs. Myers, 148 Mo. 422; Porter vs. Armstrong, 132 N. C. 66.

"The rule is that, when an injunction is invoked to re-

strain a threatened trespass, the facts showing the great or irreparable damage or mischief apprehended should be set out in the complaint or petition, as a bare averment to that effect will not alone suffice, unless supported by a proper averment of facts. This is essential in order to enable the court to judge of the necessity for an injunction. In view of the severity or harshness of the remedy by injunction, a strict adherence to this rule of pleading is required. Centerville, etc. Turnpike Co. vs. Barnett, 2 Ind. 536; 10 Ency. Pl. & Pr., 925, 926, 950, 954; High, Injunctions (3rd Ed.) Sec. 722." Wabash Railroad Co. vs. Engleman, 160 Ind. 329.

"The complaint alleges that, if the treasurer is permitted to collect this tax, 'it will work a great and irreparable injury to the plaintiff,' but the facts are not stated showing to the court the nature of such injury, or how, or why, it will result; and such an allegation in a pleading is a mere conclusion of the pleader himself, which all the authorities hold to be not the allegation of a fact. High, Sec. 491, and cases cited. So it will be seen from the foregoing that by no rational rule of construction can this complaint be held good." Insurance Co. vs. Bonner, 24 Colo. 220.

That a water user, who is being deprived of water to which he is entitled, for the irrigation of his crops, may maintain an action in injunction to restrain the unlawful diversion of such water, upon a proper showing, is well settled. This is not such a case, however. If we concede, without so deciding, however, that the community corporation could prosecute a suit, for the protection of the rights of the individual consumer, certainly where it sought to enjoin the diversion of the water, it would be required to allege the necessary facts to show irreparable injury, or adequate grounds for the relief sought. The diversion of the water, or the naked trespass, unaccompanied with great or irreparable damage or mischief, would not warrant equitable relief, as the statute affords an ample remedy. The complainant does not show that any water user is being deprived of water to which he is entitled, by reason of the alleged wrong doing of the de-

fendants. For aught that appears, there is ample water
for all of plaintiff's consumers, including those who have
not paid their assessments.

The impregnable barrier, however, to the maintenance
of the plaintiff's bill, is that it has an adequate remedy
at law. The right which it has to close down a consumer's
headgate, and preclude his use of water until he pays his
delinquent assessment, is a statutory right, for the in-
vasion of which a statutory remedy is provided.

"Where a new right, or the means of acquiring it, is
conferred, and an adequate remedy for its invasion is
given by the same statute, parties injured are confined
to the statutory redress." Smith vs. Lockwood, 13
Barb. 209.

And this is especially true, in the absence of a showing
of equitable grounds for relief.

It is the universal rule that equity will not interfere
to prevent the commission of a crime. There is of
course, an exception to this rule, which is as general
as the rule, viz: that equity will intervene to protect
property and property rights from irreparable injury,
even though the acts sought to be enjoined are criminal
acts. But the courts will not award equitable relief, in
the absence of a showing of irreparable injury, merely
because the acts complained of constitute a violation of
a criminal statute. High on Injunctions (4th Ed.), Sec.
20; Bishop's New Criminal Procedure, Secs. 1412 and
1415. And see notes to Ex Parte R. J. Allison, 3 L. R. A.
(N. S.) 622, and Detroit Realty Co. vs. Oppenheim et
al., 21 L. R. A. (N. S.) 585, for a full discussion of the
exception to the rule. Plaintiff failed to allege facts
which would bring its cause of action within the ex-
ception stated. This being true, no cause for equitable
relief was stated, and the demurrer should have been sus-
tained.

Appellee argues, however, that appellants waived any
error in the court's ruling on the demurrer, by pleading
to the merits, and that they can not now assign the ruling
of the court as error. This is of course true, unless the
ground of the demurrer is want of jurisdiction of the

subject matter, or failure of the complaint to state a cause of action.

"When the declaration fails to state a cause of action and clearly shows that, upon the case as stated, the plaintiff can not recover, and the demurrer of the defendant thereto is overruled, he may answer upon leave and go to trial, without losing the right to have the judgment upon the verdict reviewed for the error in overruling the demurrer. The error is not waived by answer, nor is it cured by verdict." Teal vs. Walker, 111 U. S. 242; 28 Law Ed. 415; City of Pontiac vs. Talbot Paving Co., 48 L. R. A. 326; Schofield vs. Territory, ex rel, 9 N. M. 533. And Sub-section 39, Sec. 2685, C. L. 1897, provides in substance that an objection that the complaint does not state facts sufficient to constitute a cause of action is not waived, even though no demurrer is filed. And it can not be said that the defects in the complaint were supplied by the evidence, as there was a complete lack of any evidence tending to show any irreparable injury to the community corporation, or any of its consumers.

Appellants filed a cross bill, in which they asked for equitable relief. Some courts have laid down the broad doctrine that the filing of a cross bill, founded on matters of equitable cognizance, will cure any defects of jurisdiction under the original bill, and authorize the granting of relief to any party entitled thereto. 5 Am. & Eng. Ency. Pl. & Pr. 657; Cockrell vs. Warner, 14 Ark. 345; Sale and Wife vs. McLean et al., 29 Ark. 612; Conger vs. Cotton, 37 Ark. 286; Radcliffe vs. Scruggs, 46 Ark. 96; Crease vs. Lawrence, 48 Ark. 312, and the same doctrine was impliedly adopted in Houston vs. Maddux, 179 Ill. 377, and Dewey vs. West Fairmont Gas Coal Co., 123 U. S. 329. The contrary rule prevails in Alabama, however. Dill vs. Shahan, 25 Ala. 694.

As we are impressed with the reason and logic of the Arkansas rule, it will be necessary to examine the cross bill to ascertain whether it states any grounds for equitable relief, thereby supplying the jurisdictional defects in the original bill.

The first cross bill, after reciting the preliminary facts, alleges:

"That as cross complainants are informed and believe, and therefore aver, said cash assessment in the amount aforesaid was not necessary for the payment of the salary of the mayordomo of said community ditch and other legitimate expenses incident to the proper conduct and maintenance of said community ditch, but was, and is largely in excess of the amount required for such purposes."

This allegation is followed by a statement of facts showing threatened irreparable injury to the cross complainants.

The acequia commissioners are authorized by the statute to make all necessary assessments to provide funds for the payment of the salary of the mayordomo and other legitimate expenses incident to the proper conduct and maintenance of the acequias under their charge. This being true, necessarily such commissioners are vested with discretion to determine the amount required for such purposes. It is a well settled principle of equity jurisprudence that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive and will not, in the absence of fraud, be disturbed. High on Injunctions. (4th Ed.) Sec. 1240. Cross complainants do not allege fraud. Their only ground for equitable relief is that the assessment was in excess of the amount required. The discretion to determine the amount is confided to the commissioners, and, where they act in good faith, their judgment is conclusive. The individual consumer can not question the legality of such an assessment, because of mere error of judgment on the part of the commissioners. In order to warrant the interposition of a court of equity he must go further and show fraud. This being true, and the cross bill containing no allegation of fraud, or bad faith, it follows that it stated no ground for equitable relief, and therefore does not bring this case within the rule

announced by the Arkansas courts, and did not cure the jurisdictional defects in the original bill.

Neither did the second cross bill, which was dismissed by the court, warrant the granting of any relief to cross complainants. By it they sought to compel the acequia commissioners to repair a portion of the ditch and intake, which had been washed out some years before. The repair of the ditch was not connected with the assessment in question, nor did it affect in any manner the relief demanded by the plaintiff.

C. L. 1897, Sec. 2685, Sub-Sec. 1:

"There shall be in this territory but one form of action for the enforcement or protection of private rights, and the redress or prevention of private wrongs, which shall be denominated a civil action, and the party thereto complaining shall be known as the plaintiff, and the adverse party as the defendant."

C. L. Sec. 2685, Sub-Sec. 41:

"The counter claim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"First—A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"Second—In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action.

"The defendant may set forth by answer as many defenses and counter claims as he may have, whether they be such as have been heretofore denominated legal or equitable or both. They must each be separately stated, and refer to the causes of action which they are intended to answer, in such manner that they may be intelligibly distinguished.

"The defendant may recover judgment on his counter claim, if proved, for any excess thereof over the plaintiff's demand as proved."

It is evident that the counter claim provided for in this statute must be intended to answer the complaint and must run counter to plaintiff's demand, in whole or in part, since judgment is provided for any excess of the counter claim over the plaintiff's demand as proved.

In the case at bar, the plaintiff's demand is for the enforcement of the regulation established by its commissioners in the exercise of the discretion vested in them by law; its cause of action is the wrong committed by the defendants in the violation of this regulation; the subject of its action consists of the regulation in question. It is not the five-mile ditch nor the title thereto, nor yet the aggregate water rights claimed by appellants. The appellants assume this by perfecting their appeal without printing the record; for the regulation in question provided for an assessment in the aggregate sum of $945.00, and the value of the ditch or the aggregate water rights mentioned evidently amounts to many thousands. The court properly sustained the demurrer to the second counter claim.

From what we have said it follows that neither the original bill, nor the counter claim, stated any cause for equitable relief, and the court was without jurisdiction to enter any judgment thereon. Oliver vs. Enriquez, 17 N. M. 206.

For the reasons stated the cause is reversed, with instructions to sustain the demurrer to the original bill, and, it is so ordered.