399 P.2d 110

C. J. McBEE and Mrs. Roberta McBee, Collins Walker and Edna Almeta Walker, Chasie McReynolds, Robert A. Clark and Mary D. Kipp, Appellees,

v.

S. E. REYNOLDS, State Engineer,

Appellant.

No. 7495.

Supreme Court of New Mexico.

Jan. 11, 1965.

Benjamin M. Sherman, Deming, and Foy & Vesely, Silver City, for appellees.

Earl E. Hartley, Atty. Gen., and Charles D. Harris, Sp. Asst. Atty. Gen., Santa Fe, for appellant.

MOISE, Justice.

The state engineer, appellant herein, argues in his first point that he "has the jurisdiction to receive for filing and to act upon applications to appropriate water in underground basins having reasonably ascertainable boundaries prior to the time he issues an order or proclamation declaring said basin to be a basin with reasonably ascertainable boundaries."

In State ex rel. Reynolds v. Mendenhall, 68 N.M. 467, 362 P.2d 998, we considered the application of Chap. 131, N.M.S.L.1931 (§§ 75-11-1 to 75-11-10, incl., N.M.S.A. 1953). The court determined that a declaration by the state engineer on February 6, 1950 that certain water was within a basin having reasonably ascertainable boundaries did not affect the right of a landowner who had initiated work to put such water to beneficial use on or before May 31, 1949, prior to the declaration and had put water on the land during the 1950 crop year. The landowner was held to have acquired a valid water right with priority date as of the commencement of the work, since he had developed the water for beneficial use with reasonable diligence.

Although the facts of this case differ from those in Mendenhall, the issues are no different except for the effect, if any, of the passage of Chap. 251, N.M.S.L.1959 (§§ 75–11–26 to 75–11–36, incl., N.M.S.A.1953, Pocket Supp.). Here the problems arise by virtue of the fact that prior to the declaration of the Lordsburg Valley Underground Water Basin on November 18, 1960, applications to appropriate underground waters in the area were received and filed in the office of the state engineer and given file numbers in order of their filing. On January 4 and 5, 1961, a hearing was held at which the applications filed before the declaration of the basin, together with the protests thereon, were considered. By memorandum opinion filed March 10, 1961, a large number of the applications so filed were approved. At the same time the applications of appellees here were denied although appellees had filed their applications after declaration of the basin, whereas all applications approved were filed prior thereto. The state engineer found that to grant the applications of appellees would impair the existing rights of the applicants who had been granted rights on their applications filed before the basin was declared, and that thereafter there was no remaining unappropriated water in the basin. None of the applicants whose applications were approved had taken any action to develop water or place it to beneficial use. The same is true as to appellees, with the exception of Robert A. Clark and C. J. McBee, both of whom had taken some steps looking to the actual development of water and the placing of it on their land.

An appeal to the district court was timely perfected from the decision of the state engineer. After hearing in the district court, findings and conclusions entered by the court were followed by a judgment reversing the state engineer's order and directing that appellees' applications be considered by the engineer along with other applications filed after declaration of the basin. It was the district court's conclusion that the state engineer had no jurisdiction to consider applications or protests filed before the basin was declared, nor to give priority to such applications over those filed after declaration of the basin, and his decision holding otherwise was declared void. This appeal followed.

State v. Mendenhall, supra, was decided June 26, 1961. The state engineer's judgment was entered before that case was decided, and his position here was the same as that taken by him and reversed by us in Mendenhall. The trial court's decision here followed Mendenhall in point of time, accords therewith, and must be affirmed unless the 1959 statute mentioned above requires a different result.

Ch. 251, N.M.S.L.1959 (§§ 75–11–26 to 75–11–36, incl., N.M.S.A.1953, Pocket

Supp.) was not applicable in Mendenhall because the case arose before its adoption. The instant case arose afterward. We noted the intervening 1959 legislation in the following language in Mendenhall:

"Finally, by Chapter 251, N.M.S.L. 1959 (§§ 75–11–26 to 75–11–36, incl., N.M.S.A.1953, Pocket Supp.) the legislature for the first time prescribed the procedure to be followed when the declaration of a basin intervened after a well had been drilled proving existence of underground waters but before the same had been placed to beneficial use on the land and provided for relation back for the priority date for such a well. This is the first occasion when statutory recognition was given to the doctrine of relation in the appropriation of underground waters.

"Of course, the issue here involving a well drilled in 1949 and 1950, the statutes passed subsequently did not affect the rights here being determined. *However, they do clearly indicate a legislative recognition that the statutory law as it existed at the time, in no way controlled or interfered with appellants' right to undertake development and to complete the appropriation under the general law.* See Pecos Valley Artesian Conservancy Dist. v. Peters, 50 N.M. 165, 173 P.2d 490." (Emphasis supplied.) 68 N.M. at 470, 362 P.2d at 1000.

We call attention to the italicized language and will here demonstrate that by the adoption of Ch. 251, N.M.S.L.1959, there was no intention to alter the law of appropriation as it theretofore existed in areas where no basin had been declared.

The title, and § 2, of Chap. 251, N.M.S.L. 1959 (§ 75–11–27, N.M.S.A.1953, Pocket Supp.) read:

"An act defining the rights of persons to waters located by them in underground sources prior to the inclusion of the lands under which such waters are found in an underground basin by the state engineer; providing for fixing the priority thereof; requiring development plans to be filed with the state engineer; requiring applications for permits for development of such waters and for hearings upon applications therefor by the state engineer; providing for an appeal; providing the time within which said waters shall be put to beneficial use and for extension thereof; providing for the protection of existing rights and subsequent stock waterings, stock wells and domestic wells; for other purposes, and declaring an emergency." Laws 1959, Ch. 251.

"When the state engineer of New Mexico shall declare, or has heretofore declared an underground water basin which shall include an area in which

any person as defined in this act [75–11–26 to 75–11–36], by the drilling of a well or wells, either for production purposes or as test wells, has proved the existence of the underground waters of such basin at the site where such well or wells are drilled, with the intent at the time of such drilling to establish or augment a water supply for beneficial use from the waters of such basin, or when the state engineer shall hereafter include or has heretofore included such an area within the boundaries of an existing underground water basin, such person shall have ninety [90] days from the date of first declaration of such basin by the state engineer, or its enlargement as the case may be, or the effective date of this act, in which to file with the state engineer plans for the development of such water for beneficial use in accordance with such intent, if the water from such well or wells had not been put to beneficial use at the time such basin was declared or extended. Such plans shall state the amount, source and use of the water to be appropriated, the time in which the water will be put to beneficial use, not to exceed four [4] years unless the time is extended by the state engineer, the limit of the intended appropriation, and such other information as may be required by the state engineer." § 75–11–27, N.M.S.A.1953.

We would first call attention to the fact that the title indicates, and § 2 (§ 75–11–27) confirms, that the legislation applies only to rights of a locator of underground waters which have proved the existence of the underground basin before its declaration. Neither the title, nor § 2, above, remotely suggest that any restrictions were intended where a property owner had initiated development of water for beneficial use before declaration of the basin which had nothing to do with proving the existence of the basin, and which had not progressed to the point where the water had been placed upon the land. This is certainly true where water had not yet been discovered, or if discovered has not " * * * proved the existence of the underground waters of such basin at the site * * * of such drilling [with the intent] * * * " to put such waters to beneficial use. In the light of the language of the section, many discoveries of water would not be affected by the act.

Since Yeo v. Tweedy, 34 N.M. 611, 286 P. 970, it has been settled in this state that waters of underground streams, channels, artesian basins, reservoirs and lakes, the boundaries of which may be reasonably ascertained, are public and subject to appropriation for beneficial use. They are included within the term "water" as used

in Art. XVI, §§ 1–3, of our Constitution. If any doubt was cast on this conclusion by Justice Parker's withdrawal of concurrence and dissent on rehearing in Yeo v. Tweedy, supra, it was certainly laid to rest in State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007.

■ The purpose sought to be accomplished by Ch. 251, N.M.S.L.1959, is not entirely clear to us. However, until shown otherwise we will assume a real and beneficial purpose. We see neither language nor intent evident in the act to in any way alter rights of land owners generally to the use of underground waters based upon priority of appropriation and placing to beneficial use.

The state engineer argues that its purpose was to protect those who had not applied water to beneficial use but had drilled a well and were not protected by the existing law. However, as already noted, our decision in State v. Mendenhall, supra, held otherwise as far as the protection afforded by the law prior to the adoption of § 75–11–19, N.M.S.A.1953, in the year 1953.

■ We have held unequivocally that as to underground waters, until a basin was declared by the state engineer, he could not exercise jurisdiction in connection therewith. Yeo v. Tweedy, supra; State ex rel. Bliss v. Dority, supra; State ex rel. Reynolds v. Mendenhall, supra. The state engineer's argument in his brief is to the effect that unless he found no basin existed he could not refuse to accept applications. As we understand Mendenhall, supra, this approach is erroneous. See § 75–11–21, N.M.S.A.1953, adopted by the legislature in 1953 (Ch. 64, § 3, N.M.S.L.1953):

"No permit and license to appropriate underground waters shall be required except in basins declared by the state engineer to have reasonably ascertainable boundaries."

■ There must be affirmative action by the state engineer to declare a basin before he obtains jurisdiction. Upon a declaration being made, rights therein not initiated before and completed in a reasonable time, may be undertaken only in conformity to the applicable statutes. The acceptance of applications could have no effect prior to declaration of a basin except possibly to give notice and make a record of intention to undertake development of water. However, it could not take the place of activities necessary to develop water and place it to beneficial use commenced and carried to completion within a reasonable time. As stated, the action of the state engineer in giving such applications greater or different meaning was error. State ex rel. Bliss v. Dority, supra; State ex rel. Reynolds v. Mendenhall, supra.

■ As a second point the state engineer argues that the appellees have not sustained their burden of proving that un-

appropriated water was available and that the granting of their applications would not impair existing rights. While we find no fault with the statement concerning the burden of proof (§ 75–11–3, N.M.S.A.1953) we do not agree with the conclusion as stated. Assuming that the state engineer has the duty to supervise the apportionment of underground water "according to the licenses issued by him and his predecessors and the adjudications of the courts" as provided in § 75–2–9, N.M.S.A.1953, certainly the licenses referred to must be legal licenses. The instant case directly involves the question of the legality of licenses or permits issued for water rights pursuant to applications filed prior to declaration of the basin. That water was available for appropriation is clearly evident and recognized by the state engineer in his decision. He admitted as much by granting the licenses and recognizing the rights of certain parties who had not established those rights by appropriation to beneficial use or by applications filed for rights in a declared underground basin. It could not be successfully contended by the state engineer that if the applications which he recognized were cancelled, as they must be, the water found available to those applications would not be present for some or all of appellees who had actually undertaken to appropriate to beneficial use before declaration of the basin, or had filed applications after its declaration. The bur-

den of proof was certainly met, and the court did not err when it so ruled.

The district court judgment is affirmed. It is so ordered.

CARMODY, C. J., and NOBLE, J., concur.