431 P.2d 492

CITY OF LAS CRUCES, a Municipal Corporation, Plaintiff-Appellee and Cross-Appellant,

v.

RIO GRANDE GAS COMPANY, a New Mexico Corporation, Defendant-Appellant and Cross-Appellee.

No. 8256.

Supreme Court of New Mexico.

Aug. 28, 1967.

George Richard Schmitt, Las Cruces, for appellee.

## OPINION

WOOD, Judge, Court of Appeals.

The appeal raises two issues: (1) the authority of a municipality to provide natural gas service more than five miles outside the municipal boundary and (2) the right to injunctive relief. The cross-appeal raises one issue: the authority of the gas company to operate within territory annexed by the municipality. The issues on the appeal and cross-appeal are unrelated.

Facts pertinent to the appeal are: Las Cruces (City of Las Cruces, a municipal corporation) operates its own natural gas distribution system. It provides service to customers more than five miles from the city limits and within territory in which Rio Grande (Rio Grande Gas Co., a New Mexico corporation) is authorized to operate. By its counterclaim, Rio Grande sought to enjoin Las Cruces from providing natural gas service in territory more than five miles from its municipal limits when that territory is within the area in which Rio Grande is authorized to operate.

The trial court denied injunctive relief to Rio Grande. It held that Las Cruces' natural gas distribution more than five miles from the municipal limits did not violate any state law and dismissed the counterclaim. Rio Grande appeals.

Las Cruces' authority to operate a natural gas utility is derived from the state. Bowdich v. City of Albuquerque, 76 N.M. 511, 416 P.2d 523 (1966). The power to act must be derived from the statute conferring it. Agua Pura Co. v. Mayor and Board of Aldermen of City of Las Vegas, 10 N.M. 6, 60 P. 208, 50 L.R.A. 224 (1900).

Rio Grande sought its injunctive relief in an action commenced in January 1965. At that time, § 14-39-32, N.M.S.A. 1953, was in effect. With certain exceptions, which are not involved here, that section

W. A. Keleher, John B. Tittman, Albuquerque, for appellant.

provides that natural gas distribution lines should not extend more than five miles from the limits of the municipality. Hooker v. Village of Hatch, 66 N.M. 184, 344 P.2d 699 (1959).

A municipal code was enacted as Laws 1965, ch. 300. Section 14–39–32, N.M.S.A. 1953, was repealed. Laws 1965, ch. 300, § 595. The municipal code does not affect rights of action against the municipality commenced before the effective date of the code, which was July 1, 1965. Laws 1965, ch. 300, §§ 592 and 597. Thus, § 14–39–32, N.M.S.A. 1953, would appear to apply.

However, both parties have presented the issue of Las Cruces' authority on the basis that §§ 14–24–1 and 14–24–3, N. M.S.A. 1953, apply. These are provisions of the municipal code enacted in 1965 and appear in N.M.S.A. 1953, vol. 3 (Supp. 1965).

Section 14–24–1, supra, states:

"A.  It is the intent of the legislature to authorize municipalities to:

"(1)   obtain the benefits of a natural gas supply or additional supply for their inhabitants and others within five [5] miles of the municipal boundary;

"(2)   take proper steps and actions necessary to that end by the acquisition of a natural gas system; and

"(3)   finance the acquisition of the natural gas system through the issuance of bonds.

"B.  Sections 14–24–1 through 14–24–6 New Mexico Statutes Annotated, 1953 Compilation, shall be liberally construed in conformity with the intent of this section."

Section 14–24–3, supra, provides in part:

"A.  The natural gas utility may include, but is not limited to:

"(1)   in the municipality and within fifty [50] miles of the municipal boundary, facilities appropriate to the transportation, pumping, storage or purification of natural gas;

"(2)   in the municipality and within five [5] miles of the municipal boundary, facilities for the distribution of natural gas.  The gas utility shall include any land or real estate needed for the location of any such facilities."

■  Las Cruces contends that the five-mile limit of § 14–24–1 is removed by the words "not limited to" appearing in § 14–24–3.  We disagree.  Whatever the meaning of "not limited to", these words do not extend the municipality's authority to distribute natural gas to customers more than five miles beyond the municipal limits. Section 14–24–1 declares the legislature's intent that municipalities are authorized to obtain the benefit of a natural gas supply "within five [5] miles of the municipal boundary."  Section 14–24–1 also provides that § 14–24–3 is to be construed in conformity with that intent.

Las Cruces did not have authority to provide natural gas service to customers more than five miles beyond its municipal boundary.  The authority was lacking under § 14–39–32, N.M.S.A. 1953 (now repealed).  It is lacking under §§ 14–24–1 and 14–24–3, N.M.S.A. 1953 (Supp. 1965). Its distribution of natural gas to customers more than five miles from the city boundary violates state law.  In holding to the contrary, the trial court erred.  Whether the error is reversible error depends on whether Rio Grande had a right to injunctive relief.

■  Injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law.  Asplund v. Hannett, 31 N.M. 641, 249 P. 1074, 58 A.L.R. 573 (1926); La Mesa Community Ditch v. Appelzoeller, 19 N.M. 75, 140 P. 1051 (1914).  The question here is whether Rio Grande has demonstrated that it will suffer an irreparable injury.

In seeking injunctive relief, Rio Grande did not proceed as a taxpayer.  Thus, authorities holding that the requirement of irreparable injury is met by showing a public loss in which the taxpayer shares are not in point.  See Shipley v. Smith, 45

N.M. 23, 107 P.2d 1050, 131 A.L.R. 1225 (1940); Ward v. City of Roswell, 34 N.M. 326, 281 P. 28 (1929).

Rio Grande seeks injunctive relief on the basis that Las Cruces is distributing natural gas beyond the five-mile limit and in territory in which Rio Grande has authority to operate. These facts do not establish irreparable injury; they fail to show the action of Las Cruces has harmed Rio Grande.

In Sierra Electric Cooperative v. Town of Hot Springs, 51 N.M. 150, 180 P.2d 244 (1947), there was a question as to the authority of the municipality to provide electrical service. Plaintiff was denied injunctive relief. There it was stated:

"Even admitting that the defendant's action in engaging in the public utility business * * * would be ultra vires * * * this could not properly concern such plaintiff—certainly, does not entitle it to injunctive relief—unless it can show damage. How can it do so if itself unable to give the service which it claims the defendant threatens unlawfully to furnish? The mere fact that the Town would be engaging in an ultra vires act, if it would, does not alone entitle the plaintiff to complain. "* * * There will be time enough for it to complain when it can show hurt. * * *"

█ Here, there was no showing that Rio Grande was able to give the service which Las Cruces is furnishing unlawfully. Thus, Rio Grande has failed to show injury to itself entitling it to injunctive relief. La Mesa Community Ditch v. Appelzoeller, supra. The trial court did not err in dismissing the petition for injunctive relief.

Facts pertinent to the cross-appeal are: Under a certificate of public convenience and necessity issued by the Public Service Commission, Rio Grande has authority to provide natural gas service to customers in Dona Ana County outside of the municipal limits of Las Cruces. Under a franchise from the Board of County Commissioners of Dona Ana County, Rio Grande has authority to use streets, alleys and public ways in the county outside of municipalities. This use is for the installation of transmission and distribution lines required by Rio Grande to render natural gas utility service.

In October 1964, Las Cruces annexed an area in Dona Ana County known as Mesilla Park. Las Cruces filed a declaratory judgment action asking the court to declare its authority to grant or deny Rio Grande permission to construct or operate a natural gas public utility within the annexed area. The trial court held that Rio Grande had the right to render natural gas utility service in the annexed area and that Las Cruces could not deprive Rio Grande of that right. Las Cruces cross-appeals.

Prior to the annexation, Rio Grande was authorized to provide natural gas utility service within the annexed area. In providing that service, Rio Grande was authorized to use the streets, alleys and public ways of the annexed area.

How was this authority affected by the annexation? The annexation brought the area within the municipal limits. Rio Grande does not have authority to provide service within the municipal limits. Thus, its right to serve tthe annexed area depends on whether the act of annexation cut off its prior right.

We determine the issue of Rio Grande's rights on the basis of its franchise to use the streets, alleys and public ways of the annexed area. No issue is raised concerning § 68–7–2, N.M.S.A. 1953; we do not consider whether it has application to the facts of this case. See New Mexico Elec. Serv. Co. v. Lea County Elec. Coop., 76 N.M. 434, 415 P.2d 556 (1966), cert. denied 385 U.S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433.

█ If Rio Grande had erected, constructed or, in good faith, commenced the erection or construction of a natural gas utility system within the annexed area prior to the annexation, then Las Cruces was required to recognize Rio Grande's

right to use the streets, alleys and public ways of the annexed area in providing natural gas utility service to that area. Such recognition is required by § 14–21–48, N.M.S.A. 1953 (now repealed) and by § 14–43–2, N.M.S.A. 1953 (Supp. 1965). Village of Ruidoso v. Ruidoso Telephone Co., 52 N.M. 415, 200 P.2d 713 (1948); Village of Hobbs v. Mann, 39 N.M. 76, 39 P.2d 1025 (1935); see Mountain States T. & T. Co. v. Suburban Telephone Co., 72 N.M. 411, 384 P.2d 684 (1963); Mountain States T. & T. Co. v. Town of Belen, 56 N.M. 415, 244 P.2d 1112 (1952).

Las Cruces contends that Rio Grande had not commenced construction prior to annexation. It attacks the conclusion of the trial court that Rio Grande had a vested right to use the streets, alleys and public ways of the annexed area. In attacking this conclusion it relies on findings of the trial court to the effect that Rio Grande first entered on the streets and ways of the annexed area some three hours after the annexation was completed. Las Cruces refers us to decisions of other jurisdictions interpreting the word "commence" to mean a digging into or actual breaking of ground.

Las Cruces, however, makes no attack upon findings of the trial court. Findings pertaining to action of Rio Grande prior to the annexation are to the following effect:

1. A feasibility report for $600,000.00 in financing was based on its right to sell natural gas to all consumers in Dona Ana County outside of the municipal limits of Las Cruces as such limits existed in 1962.

2. It had in good faith expended in excess of $600,000.00 in installing and constructing its system within its franchised territory.

3. It had installed a 4-inch high pressure gas transmission line adjacent to the annexed area designed to, and adequate to, serve the residents of said annexed area with a natural gas distribution system from the high pressure line.

4. It had purchased and had available all materials necessary to serve consumers in the annexed area.

5. The annexed area had been included in its overall plan for natural gas utility service; it had in good faith acquired necessary materials to provide such service; was then and now is ready, able and willing to provide such service.

Being unattacked, the appeal rests on these facts. Reed v. Nevins, 77 N.M. 587, 425 P.2d 813 (1967). The question then is whether these findings support the trial court's conclusion that Rio Grande had acquired a vested right prior to the annexation. Kerr v. Akard Brothers Trucking Co., 73 N.M. 50, 385 P.2d 570 (1963).

State ex rel. Reynolds v. Mendenhall, 68 N.M. 467, 362 P.2d 998 (1961), and McBee v. Reynolds, 74 N.M. 783, 399 P.2d 110 (1965), use the word "commence" as synonymous with "initiate." The undisputed facts show that Rio Grande had initiated construction of a natural gas utility system for the annexed area prior to the annexation. Neither § 14–21–48, N.M.S.A. 1953, nor § 14–43–2, N.M.S.A. 1953 (Supp. 1965), require actual digging in the streets of the annexed area. All that is required is that the utility commence construction in good faith so as to provide utility service for the area. See Hilliard v. Franzheim, 180 So.2d 746 (La. App.1965). The findings support the conclusion of the trial court.

Rio Grande had acquired the right to use the streets, alleys and ways of the annexed area prior to the annexation. Under § 14–21–48, N.M.S.A. 1953, and § 14–43–2, N.M.S.A. 1953 (Supp. 1965), Las Cruces is required to recognize that right.

The judgment of the trial court is affirmed.

It is so ordered.

MOISE and CARMODY, JJ., concur.